UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JANINE SNIDER,<br><br>            Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No. SACV 15-00528-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Janine Snider ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Income ("SSI") disability benefits. The Court concludes that the ALJ's finding that Plaintiff's impairments were nonsevere was supported by substantial evidence and that the ALJ properly considered all the probative medical evidence. The ALJ's decision is accordingly affirmed and the matter is dismissed with prejudice.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her application for SSI on October 12, 2011, alleging disability with an onset date of December 26, 2007. Administrative Record

("AR") 138-43. After Plaintiff's application was denied at the initial stage, an administrative hearing was held before the ALJ. AR 55-77. On July 5, 2013, the ALJ issued an unfavorable decision. AR 15-29. In reaching this decision, the ALJ found that Plaintiff did not have any severe impairments or combination of impairments. AR 20. The Appeals Council denied Plaintiff's request for review on February 12, 2015. AR 1-6. This action followed.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ: (1) erred in finding that Plaintiff did not suffer from any severe impairments; and (2) properly rejected probative medical source opinions. See Joint Stipulation ("JS") at 3.

## III.
## DISCUSSION

### A. The ALJ Properly Determined that Plaintiff Did Not Suffer From Any Severe Impairments

Plaintiff contends that the ALJ erred in failing to find, at step two of the sequential evaluation process, that Plaintiff's medical determinable impairments were severe. JS at 4-7.

#### 1. Applicable Law

At step two of the sequential evaluation process, the claimant has the burden to show that she has one or more "severe" medically determinable impairments that can be expected to result in death or last for a continuous period of at least 12 months. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (noting claimant bears burden at step two); Celaya v. Halter, 332 F.3d 1177, 1180 (9th Cir. 2003) (same); 20 C.F.R. § 416.908 (defining "physical or mental impairment"), 416.920(a)(4)(ii) (claimants will be found not disabled at step two if they "do not have a severe medically determinable physical or mental impairment that meets the duration requirement"). A medically

determinable impairment must be established by signs, symptoms, or laboratory findings; it cannot be established based solely on a claimant's own statement of his symptoms. 20 C.F.R. § 416.908; Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005); SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996). A "medical sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques." Ukolov, 420 F.3d at 1005 (quoting SSR 96-4p, 1996 WL 374187, at *1 n.2 (July 2, 1996) (internal quotation marks omitted)); accord § 416.928(b).

To establish that a medically determinable impairment is "severe," moreover, the claimant must show that it "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); accord § 416.921(a). "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks omitted); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."). Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. Webb, 433 F.3d at 687.

**2. Analysis**

First, Plaintiff contends that the ALJ should have given more weight to the functional limitations identified by Dr. Ella-Tamayo, the consultative examiner. JS at 5 (citing AR 301). But the ALJ properly noted that substantial evidence in the record contradicted the limitations found by Dr. Ella-Tamayo.

The ALJ cited to treatment records from Dr. Fink which showed no objective evidence of significant, ongoing, functional difficulties and revealed no significant abnormalities. AR 21 (citing AR 325-70, 452-70). Because these records are from a treating physician, the ALJ appropriately gave Dr. Fink's opinions more weight. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (holding that the opinion of a treating physician is generally entitled to more weight than that of an examining physician). Specifically, the ALJ noted that a whole body bone scan performed in February 2012 revealed "nothing beyond some mild degenerative changes, with no evidence of acute trauma, facture or neoplastic process." AR 21 (citing AR 470). The ALJ also noted that a pelvic ultrasound, an abdominal ultrasound, and a CT scan, all performed in March 2012, showed nothing to indicate any severe impairments. AR 438-39, 485. Additionally, the ALJ noted that Dr. Hwynn conducted an annual physical examination on March 29, 2012, which revealed no acute distress or abnormalities. AR 22 (citing AR 475). The ALJ cited another physical examination conducted on April 10, 2013 which also revealed no significant abnormalities. Id. (citing AR 477-78).

Moreover, the ALJ noted that although Plaintiff testified to being "essentially incapacitated by her conditions," the ALJ did not give her subjective symptom testimony much weight because it was not consistent with or supported by the record, AR 23, a finding Plaintiff does not challenge here. The ALJ pointed out that despite Plaintiff's testimony, she "sought treatment infrequently" and her treatment was generally conservative. Id. Plaintiff contends that the three epidural shots she received in 2012 constituted "invasive" treatment. JS at 6; see AR 546, 524, 500. But the ALJ noted that Dr. Mills administered these treatments "despite the lack of findings" of any significant abnormalities. AR 23. Furthermore, Plaintiff reported improvement of her pain as a result of the epdurals and on November 20, 2012, Plaintiff

noted that she had "almost complete resolution of her pain," AR 500. "Impairments that can be controlled effectively are not disabling." Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006 (9th Cir. 2005). Subsequently, on April 10, 2013, Plaintiff reported at her annual physical exam that she was generally healthy, had no change in strength or exercise tolerance, and exercised occasionally by walking. AR 477. Accordingly, the ALJ concluded that Plaintiff's allegations were not credible. AR 24.

In support of Dr. Ella-Tamayo's functional assessment, Plaintiff points to Dr. Ella-Tamayo's finding of degenerative disc disease following a review of an x-ray of Plaintiff's lumbar spine, JS at 5 (citing AR 297), and assessment of pain on flexion of 70 degrees/90 degrees following an examination of Plaintiff's back, id. (citing AR 300). However, neither of these findings indicates that Plaintiff's conditions are severe. See Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (holding that a finding of medical conditions was not enough "to support [plaintiff's] claim that those impairments are 'severe'"); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."). Furthermore, the ALJ noted that Dr. Ella-Tamayo's own physical examination of Plaintiff revealed no significant abnormalities that would support the limitations in the functional assessment. AR 22 (citing 374-76). An ALJ may reject an examining physician's conclusions that are inconsistent with the physician's own medical findings. Bayless v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Tonapetyan, 242 F.3d at 1149; see Chavez v. Astrue, No. 09-352, 2010 WL 5173190, at * 6 (E.D. Wash. Dec. 13, 2010) (finding that ALJ properly rejected treatment provider's opinion that was contradicted by provider's own assessment of mild to moderate limitations).

Moreover, the ALJ concluded that because Dr. Ella-Tamayo failed to explain the basis for the limitations, her limitations appeared to be solely on

Plaintiff's subjective complaints. AR 22-23. Because the ALJ concluded that Plaintiff's complaints were not credible, it was appropriate for the ALJ to reject Dr. Elle-Tamayo's opinion. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected the opinion of examining physician which lacked objective support and relied on Plaintiff's discredited subjective complaints).

In sum, the ALJ's finding that the record lacks objective medical evidence to support the alleged severity of Plaintiff's impairments is supported by substantial evidence, and the ALJ properly weighed the medical evidence in assessing the severity of Plaintiff's condition. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982) (noting it is ALJ's role to resolve conflicting medical reports and opinions); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (noting it is ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence). Accordingly, the ALJ reasonably found that Plaintiff's medically determinable mental impairments were nonsevere. AR 20-24.

**B.     The ALJ Properly Considered the Medical Source Opinions**

Plaintiff contends that the ALJ erred by failing to discuss opinions of state agency physicians Chan and May or provide any reasons for rejecting their opinions regarding Plaintiff's physical limitations. JS at 14.

**1.     Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did not treat or examine the plaintiff. See 20 C.F.R. § 416.927(c); Lester, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. Thus, the ALJ must give

specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31. If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester, 81 F.3d 821, 830 (9th Cir. 1996) (citing Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991)). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan, 242 F.3d at 1149. The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Orn, 495 F.3d at 631; see also 20 C.F.R. § 416.927(d)(2)(i)-(ii).

### 2. The ALJ Did Dot Err in Rejecting Dr. May's Opinion

As the ALJ noted, SSI benefits cannot be paid before the date of Plaintiff's current application, October 12, 2011. AR 21. Therefore, because Dr. May's opinion is from April 16, 2009, AR 305-10, it does not have significant probative value. The ALJ also noted that while he reviewed the records from before October 12, 2011, he focused on the record since that date as any prior information "shed little light on [Plaintiff's] impairments and ability to function since that date" and therefore "do not warrant detailed analysis." AR 21. The Court agrees and accordingly finds that the ALJ gave specific and legitimate reasons for rejecting Dr. May's findings. See Howard v. Barnhart, 342 F.3d 1006, 1012 (9th Cir. 2003) (noting that ALJ does not need to discuss every piece of evidence in the record and is "not required to discuss

7

evidence that is neither significant nor probative.").

### 3. The ALJ Did Not Err in Rejecting Dr. Chan's Opinion

On January 3, 2012, Dr. Chan opined that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. AR 83.

Plaintiff contends that the ALJ failed to address the contradictions between the ALJ's findings and the limitations found by Dr. Chan, implicitly rejecting these opinions. AR 14. Plaintiff cites to multiple cases where courts have held that the ALJ must explain the rejection of state agency physicians' opinions. JS at 13 (collecting cases). However, here the ALJ does explain the rejection of Dr. Chan's opinion. Because Dr. Chan is a non-examining consultative physician, the opinion is based on review and evaluation of the record. Dr. Chan's report specifically noted that Dr. Ella-Tamayo's evaluation as the primary source of evidence upon which the assessment of Plaintiff's limitations was based. AR 83. Therefore, the ALJ's specific and legitimate reasons for rejecting Dr. Ella-Tamayo's conclusions also serve as an explanation for the rejection of Dr. Chan's opinion.

### C. Any Error the ALJ Made in Evaluating the Medical Evidence and Severity of Plaintiff's Impairments Was Harmless

Even if the ALJ erred in rejecting Dr. Ella-Tamayo's opinion and finding Plaintiff's impairments nonsevere, any error was harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error principles apply in the Social Security Act context."). To establish reversible error, Plaintiff must specifically show that Dr. Ella-Tamayo's opinion, if credited, would alter the ultimate nondisability determination. See id. at 1116 (citing Robbins v. Soc. Sec. Admin, 466 F.3d 800, 885(9th Cir. 2006) (reaffirming that an ALJ's decision will be reversed

when omitted lay testimony, if credited, leads to a different disability conclusion)).

Here, Plaintiff has not made any such showing. The ALJ concluded that even if Plaintiff's subjective complaints were credited and weight was given to Dr. Ella-Tamayo's opinion, Plaintiff would still not be found "disabled" as defined by the Social Security Act. AR 24. The ALJ noted that the vocational expert ("VE") was given a hypothetical individual with Plaintiff's age, education, work experience, and residual functional capacity based on Dr. Ella-Tamayo's findings and Plaintiff's allegations. Id. The VE testified that such an individual would be able to perform Plaintiff's past relevant work as a food server as "is generally performed in the national economy" because it does not include any activities precluded by the assessed limitations. Id.; see AR 75-76. Accordingly, the errors Plaintiff alleges, even if true, are harmless and do not warrant reversal because they do "not negate the validity of the ALJ's ultimate [credibility] conclusion." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004); see also Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (defining harmless error as such error that is "irrelevant to the ALJ's ultimate disability conclusion").

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: April 28, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge